The STATE of Ohio, Appellee,

v.

BEAM, Appellant.

[Cite as *State v. Beam* (1991), 77 Ohio App.3d 200.]

Court of Appeals of Ohio,
Lake County.

No. 90–L–15–134.

Decided Sept. 16, 1991.

*Steven C. Latourette,* Lake County Prosecuting Attorney, and *Jeffrey W. Fram,* Assistant Prosecuting Attorney, for appellee.

*R. Paul LaPlante,* Lake County Public Defender, and *James B. Ritts,* Assistant County Public Defender, for appellant.

NADER, Judge.

On March 12, 1990, at 11:25 p.m., appellant, George C. Beam, was arrested for driving left of center (R.C. 4511.29), driving while under the influence of alcohol or drugs (R.C. 4511.19[A][1]), driving while having a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath (R.C. 4511.19[A][3]), and operating an automobile without wearing his seatbelt (R.C. 4513.263). Appellant was arraigned in the Painesville Municipal Court on March 13, 1990. At that time, appellant was found indigent and counsel was appointed for him.

On April 19, 1990, appellant filed a motion to suppress evidence obtained by the state in violation of appellant's constitutional rights. Appellant's motion to suppress also challenged the state's evidence regarding the procedure the state followed when it tested its breathalyzer for radio frequency interference.

An oral hearing on the motion to suppress was requested by appellant's counsel, and the hearing was scheduled for April 26, 1990. A trial on the merits had been scheduled for April 27, 1990. Pursuant to appellant's motion

for a continuance, the trial court continued both the hearing on the motion and the trial.

On May 3, 1990, appellant's motion to suppress was heard by and submitted to the trial court.

On May 3, a subpoena *duces tecum* was issued on behalf of appellant. On May 14, 1990, appellant filed a motion for public payment of a videotape deposition.

Nothing appears on the transcript between May 14 and August 20, 1990. On August 20, the trial court received supplemental case authority from the prosecutor, and denied appellant's motions to suppress and for public payment of a videotape deposition.

On August 22, 1990, the case was set for trial on September 7, 1990.

On September 6, 1990, appellant filed a motion to dismiss, alleging that the state had violated his right to a speedy trial. Appellant also filed, on September 6, a motion for written conclusions of law and findings of fact.

The trial court held a hearing on September 6 and denied the motion to dismiss. That same day, appellant changed his plea to the blood-alcohol charge to no contest and was found guilty. The other charges were dismissed.

Appellant timely appeals and asserts the following assignments of error:

"1. The trial court erred in denying the defendant-appellant's motion to suppress all evidence obtained by the police where it was not proven that the defendant-appellant knowingly and intelligently waived his miranda rights.

"2. The trial court erred to the prejudice of the defendant-appellant in denying the defendant-appellant's motion to suppress all evidence obtained as a result of the breathalyzer test where the state did not provide evidence of compliance with O.A.C. statute 3701–53–02 in properly testing the B.A.C. verifier.

"3. The trial court erred in denying the defendant-appellant's motion to dismiss due to a violation of his right to a speedy trial."

Appellant's first assignment of error challenges the trial court's denial of his motion to suppress statements made by him. Appellant states that he did not knowingly and intelligently waive his *Miranda* rights. Consequently, he argues, any statements made by him are inadmissible against him, and the trial court erred by failing to suppress the statements.

The facts which appellant claims support his argument are the absence of the word "waiver" on the *Miranda* rights card, and the arresting officer's failure to ask appellant if he wished to "waive" his rights.

The following discussion appears in the transcript of a videotape that was taken on the night of appellant's arrest at the Painesville police station:

"DEPUTY KING: 'I'm a police officer. I warn you anything you say will be used in a court of law against you. You have an absolute right to remain silent; and you have the right to the advice of a lawyer before and the presence of a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you free before any questioning.'

"Do you understand that right?

"MR. BEAM: Yes, I do."

■ A proper waiver of *Miranda* rights is not a matter of form; rather, the question is whether the defendant knowingly and voluntarily waived his rights. *State v. Scott* (1980), 61 Ohio St.2d 155, 15 O.O.3d 182, 400 N.E.2d 375, following *North Carolina v. Butler* (1979), 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286, 292. Determining whether a valid waiver of *Miranda* rights occurred requires a consideration of the totality of circumstances surrounding the interrogation as to whether statements were made knowingly and voluntarily, and whether defendant decided to forgo his rights to assistance of counsel and to remain silent. *Fare v. Michael C.* (1979), 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197.

In this case, the state's witness, Sheriff's Deputy Keith A. King, testified that he read the Miranda rights to appellant on two separate occasions. One of these occasions was videotaped, as noted above. Appellant signed the Miranda rights card, acknowledging he understood his rights. At no time did appellant indicate that he wished to speak to an attorney; nor did he seek to terminate discussions with Deputy King. The trial court found these events constituted a valid waiver of appellant's rights. As the trier of fact at the suppression hearing, the trial court could reasonably find a voluntary waiver on the facts of this case. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

■ Even if there were no waiver, however, the trial court did not err by denying appellant's motion to suppress. The Fifth Amendment to the United States Constitution guarantees to an accused the right not to be compelled to *testify* against himself. It does not apply to nontestimonial evidence. *Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908; *Beavercreek v. Blue* (1984), 16 Ohio App.3d 166, 16 OBR 175, 474 N.E.2d 1235.

■ In this case, appellant was initially stopped for driving left of center. Deputy King approached appellant's vehicle and noticed that appellant smelled of alcohol and also had glassy eyes and slurred speech. Deputy King then asked appellant to perform field sobriety tests. Seeing that appellant per-

formed those tests poorly, Deputy King placed appellant under arrest for driving under the influence of alcohol and transported him to the Painesville Police Department. Appellant then tested .147 on the breathalyzer. None of these events is "testimonial," yet taken together they support a conviction under R.C. 4511.19(A)(3).

The evidence in this case, assuming the validity of the breathalyzer test (see Assignment of Error No. II, *infra*) is sufficient, standing alone, to support appellant's conviction. Thus, any error the trial court may have made by failing to suppress appellant's confession of guilt is harmless. The United States Supreme Court has recently held that coerced confessions can be subjected to harmless error analysis. *Arizona v. Fulminante* (1991), 499 U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302. Although it is clear that there was no *coerced* confession in this case, even if there were a technical *Miranda* violation, the facts of this case render the error harmless.

Appellant's first assignment of error is without merit.

■■■ Appellant's second assignment of error attacks the trial court's failure to suppress the breathalyzer evidence. Appellant asserts that the state did not produce sufficient evidence of its compliance with Ohio Adm. Code 3701–53–02(C), which requires that a breathalyzer unit be tested for radio frequency interference.

Ohio Adm.Code 3701–53–02(C) stated:

"A radio frequency interference (RFI) survey shall be performed for each breath testing instrument listed in paragraphs (A)(1) to (A)(3) and (A)(5) of this rule that is in operation at each breath testing site. RFI surveys are not required for the instrument listed in paragraph (A)(4) of this rule. Survey results shall be recorded on the form set forth in appendix G to this rule. The original RFI survey form and any subsequent RFI survey forms shall be kept on file in the area where tests are performed. A new survey shall be conducted when a breath testing instrument's spatial placement or axis is changed from that designated in the most recent survey form. Radio transmitting antennae shall not be used within any RFI-affected zone during conduct of a subject test or a calibration check."

This court has, on several occasions, addressed the requirements of Ohio Adm.Code 3701–53–02(C). Most recently, this section was reviewed in *State v. Petryshack* (May 17, 1991), Portage App. No. 90–P–2209, unreported, 1991 WL 84228. In *Petryshack,* we reiterated the requirement that breathalyzer tests be performed in "substantial compliance" with the requirements of Ohio Adm.Code 3701–53–02(C). *Id.,* at 3, citing *State v. Plummer* (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902; *State v. Steele* (1977), 52 Ohio St.2d

187, 6 O.O.3d 418, 370 N.E.2d 740; *State v. Trill* (1991), 66 Ohio App.3d 622, 585 N.E.2d 914, unreported; *State v. Michael* (July 15, 1988), Portage App. No. 1811, unreported, 1988 WL 75727.

In *State v. Bennett* (1990), 66 Ohio App.3d 595, 585 N.E.2d 897, this court reversed a conviction under R.C. 4511.19(A)(3) because the state failed to put on *any* evidence that an RFI survey had been performed.

Unlike in *Bennett,* the state in the instant case did put on some evidence of compliance with Ohio Adm.Code 3701–53–02(C). The essence of appellant's argument is that the evidence of the RFI survey, produced by the state through the testimony of Lieutenant David C. Chappell of the Painesville Police Department, is not sufficient to rise to the level of substantial compliance with Ohio Adm.Code 3701–53–02(C).

The state notes that *Bennett* says that production of the most recent RFI survey would be sufficient to show substantial compliance. *Bennett, supra* at 598, 585 N.E.2d at 899. The question remains, however, whether the state laid a proper foundation for admission of the document into evidence. A question also remains as to whether the document was properly admitted under an exception to the rule against hearsay.

Appellee correctly notes that Evid.R. 901(B)(7) controls the authentication of the RFI survey in this case. The rule gives the following as an example of sufficient authenticating evidence:

*"Public Records or Reports.* Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement or data compilation, in any form, is from the public office where items of this nature are kept."

All this rule requires is that the proponent of the document introduce evidence that the document is from the public office where the report is kept. Thus, the testimony of Lieutenant Chappell was sufficient to authenticate the document; he had personal knowledge that the RFI survey was kept at the Painesville Police Department. The report was, therefore, properly authenticated pursuant to the rule.

With regard to the hearsay nature of the document, Evid.R. 803 states that the following are not excluded by the hearsay rule:

"(8) Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel,

unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness."

While clause (b) of this paragraph appears to guarantee an accused the right to confront the maker of any police records made in a criminal case, the Supreme Court has established an exception to the rule. Where the police report does not recite an officer's observations made as part of an investigation of criminal activities, the reporting officer need not be called at trial. *State v. Ward* (1984), 15 Ohio St.3d 355, 358, 15 OBR 477, 478, 474 N.E.2d 300, 302. The reason for this rule, the court stated, is that records which are routine are likely to be reliable and are precisely the type contemplated as admissible by the public records exception to the rule against hearsay. *Id.* at 358, 15 OBR at 478, 474 N.E.2d at 302. It is clear that an RFI survey is not an officer's observations made as part of an investigation of criminal activities. Rather, it is a routine report which is likely to be reliable; it is, therefore, admissible under Evid.R. 803(8)(b).

In summary, Lieutenant Rea filed a report showing the RFI survey had been conducted pursuant to Ohio Adm.Code 3701–53–02(C). Lieutenant Chappell testified that he had seen Lieutenant Rea conduct the survey. We hold that these facts are sufficient to establish that the state had substantially complied with Ohio Adm.Code 3701–53–02(C).

Appellant's second assignment of error is without merit.

Appellant's third assignment of error asserts that the trial court erred by not dismissing the charges against him. This claim is founded on appellant's right to a speedy trial.

R.C. 2945.71 is Ohio's speedy-trial statute. It states, in pertinent part:

"A person against whom a charge of misdemeanor, other than a minor misdemeanor, is pending in a court of record, shall be brought to trial:

" * * *

"Within ninety days after his arrest or the service of summons, if the offense charged is a misdemeanor of the first or second degree, or other misdemeanor for which the maximum penalty is imprisonment for more than sixty days."

R.C. 2945.72(E) states that "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused" will cause the time stated in R.C. 2945.71 to be extended.

In this case, appellant filed a motion to suppress thirty-seven days after he was arrested. Unquestionably, under R.C. 2945.72, the motion *automatically* tolled the statutory time for trial. *State v. Angstrom* (Mar. 11, 1988), Geauga App. No. 1392, unreported, 1988 WL 32959. Seventeen days after the trial

court overruled appellant's motion to suppress appellant was found guilty of violating R.C. 4511.19(A)(3). The total number of days during which the statute was running was fifty-four. Without more, it is clear that the statutory time was met in this case.[1]

Appellant suggests, however, that the trial court's one-hundred-nine-day delay in ruling on his motion to suppress was longer than permitted under the statute. The real question, under R.C. 2745.72(D), is whether a delay of almost four months may be made necessary by a motion to suppress.[2]

Several Ohio courts of appeals have addressed the issue of how long a period of time the trial court may have to rule on a motion. At one extreme, it is clear that waiting seven months to rule on a motion is an unnecessary delay. *State v. Petersen* (Mar. 24, 1989), Erie App. No. E–88–6, unreported, 1989 WL 27144. It is also clear that a delay of thirty-five days is not unreasonable. *State v. Pieren* (May 16, 1990), Columbiana App. No. 89–C–22, unreported, 1990 WL 65379. In between those two extremes, the lines become blurred. *State v. Watkins* (Oct. 18, 1985), Montgomery App. No. 9006, unreported, 1985 WL 6956 (delay of fifty-eight days is unreasonable); *State v. Jackson* (May 16, 1989), Montgomery App. No. 10817, unreported, 1989 WL 52850 (delay of seventy-seven days is not unreasonable); *State v. Rannebarger* (June 7, 1984), Delaware App. No. 84–CA–2, unreported, 1984 WL 4915 (delay of ninety days is unreasonable); *State v. Kaser* (April 19, 1988), Holmes App. No. CA–381, unreported, 1988 WL 38623 (ninety-day delay tolls statute a maximum of ninety days.)

In *Kaser*, the Fifth District Court of Appeals looked to C.P.Sup.R. 6 for guidance. That rule formerly stated, in pertinent part:

"Each judge of a court of common pleas shall review, or cause to be reviewed, quarterly, all pending motions and cases submitted to him for determination after court trial. The number of pending motions and cases submitted for determination which have been pending more than 90 days shall be separately reported the month next following the end of the quarter on forms provided by the Administrative Director. With respect to motions, the 90 day period shall begin to run on the day the motion is filed or made. With

---

1. The usual format for calculating speedy trial time is as follows:
   March 13—date of arraignment and assignment of counsel;
   April 19—to filing of motion to suppress—thirty-seven days;
   May 3—to date of hearing—fourteen days (time tolled);
   Aug. 20—to date of ruling of motion—one hundred nine days (time tolled);
   Sept. 6—to plea of no contest and finding of guilty—seventeen days.
   Total time, untolled: fifty-four days.

2. As noted above, R.C. 2945.72(D) provides, *inter alia,* that the speedy trial time is tolled for that period of time *"necessitated"* by a motion to suppress.

respect to cases submitted to the court for determination, the 90 day period shall begin to run on the day the trial is concluded. The Chief Justice of the Supreme Court may require specific information from the administrative judge or judge reporting, or both, as to the reasons of delay in such rulings."

Reading this section as establishing ninety days as the reasonable period for ruling on the motion, the court excluded the maximum of ninety days from its calculation of speedy-trial time.

The instant case proceeded before a municipal court. M.C.Sup.R. 5(A), Criminal Case Time Limits, states: "All criminal trials shall be tried within the time provided in R.C. Chapter 2945." The new M.C.Sup.R. 6 (effective January 1, 1990), in pertinent part, states: "All motions shall be ruled upon within 120 days from the date the motion was filed, except as otherwise noted on the division report forms."

It can be seen that municipal courts, like common pleas courts, have an administrative duty to rule on motions within a certain time period. It seems probable that the Supreme Court, in setting the rule, perceived one hundred twenty days to be the outside time limit of reasonableness in ruling on a motion.

Applying the rationale of the *Kaser* case, the trial court did not exceed its permitted time by ruling on the motion one hundred nine days after it was heard.

Another perspective also compels us to find that the trial court did not take an unreasonable time in ruling upon defendant's motion. As stated above, there were fifty-four days during which the speedy-trial time remained untolled. Subtracting fifty-four from the permitted ninety days yields a thirty-six-day surplus which could have been applied against untolled time.

By subtracting the thirty-six-day surplus from the one hundred nine days it took to rule on the motion, a difference of seventy-three days remains. We hold that seventy-three days is not an unreasonable time to rule on a motion to suppress. See *Jackson, supra* (seventy-seven days is not unreasonable).

Appellant's third assignment of error is without merit.

In light of the foregoing law and analysis, the decision of the trial court is affirmed.

*Judgment affirmed.*

JOSEPH E. MAHONEY, J., concurs.

CHRISTLEY, P.J., dissents.

CHRISTLEY, Presiding Judge, dissenting.

While I concur with the majority's analysis as to the first two assignments, I cannot agree that appellant's statutory right to a speedy trial was not violated in this instance. In my estimation, the purpose behind the statutory provisions, R.C. 2945.71 *et seq.*, required the trial court to rule upon appellant's motion to suppress within a shorter period than one hundred nine days following the hearing. Accordingly, I dissent.

In concluding that the trial court did not exceed the "permitted" time for rendering its decision on the motion, the majority cites M.C.Sup.R. 6. This rule provides that a municipal court must render a judgment upon a motion within one hundred twenty days of the date it was filed. The majority then holds that "[i]t seems probable that the Supreme Court, in setting the rule, perceived one hundred twenty days to be the outside time limit of reasonableness in ruling on a motion."

However, precedent concerning the application of rules of superintendence supports the conclusion that such rules are irrelevant to determining whether a violation of the statutory right to a speedy trial has occurred. In *State v. Singer* (1977), 50 Ohio St.2d 103, 4 O.O.3d 237, 362 N.E.2d 1216, the defendant argued that the charges against him should have been dismissed because he had not been brought to trial within the time limit set forth in C.P.Sup.R. 8(B). At that time, this rule stated that all criminal cases had to be tried within six months of the date of the defendant's arraignment.

In rejecting this argument, the Supreme Court in *Singer* noted that rules of superintendence were primarily designed to aid in the expeditious disposition of both criminal and civil cases. The court then held, at 110, 4 O.O.3d at 241, 362 N.E.2d at 1220–1221:

"Because we believe that R.C. 2945.71 through 2945.73 rationally attempt to statutorily define speedy trial, and thus we impose their directives on the state and trial courts (*State v. MacDonald* [ (1976), 48 Ohio St.2d 66, 71, 2 O.O.3d 219, 221, 357 N.E.2d 40, 43] ), Sup.R. 8(B) is immaterial to the disposition of this case. The Rules of Superintendence are not designed to alter basic substantive rights of criminal defendants. If R.C. 2945.71 through 2945.73 did not constitutionally dispose of the speedy trial issue, then Sup.R. 8(B) would become material, but certainly subservient to, if inconsistent with, constitutional mandates."

Consistent with the *Singer* holding, appellate courts have held that rules of superintendence are merely guidelines for judges and are not the equivalent of rules of procedure and practice. See, *e.g., State v. Mahoney* (1986), 34 Ohio App.3d 114, 517 N.E.2d 957; *State v. Gettys* (1976), 49 Ohio App.2d 241, 3 O.O.3d 286, 360 N.E.2d 735.

Practical considerations also support the conclusion that the one-hundred-day limit in M.C.Sup.R. 6 is not controlling in deciding whether a violation of the right to a speedy trial has occurred. R.C. 2945.71(A) states that a defendant charged with a minor misdemeanor must be brought to trial within thirty days of his arrest. Under the majority's analysis, a municipal court could properly wait one hundred twenty days, or *four times* the duration of the statutory period, to rule upon any motion raised by the defendant. In my opinion, such a result would defeat the intent of the legislature, as indicated in R.C. 2945.71, that crimes of lesser severity be tried within a corresponding shorter period of time.

Given the precedent on this point, this writer concludes that the time limit set forth in M.C.Sup.R. 6 is not even a factor which can properly be considered in determining whether the delay in this case was inordinate. Instead, this court's decision should be based solely upon whether the delay is consistent with the principles behind the speedy-trial statutes.

In determining issues similar to the one presented in the instant case, the courts of this state have not set forth specific criteria for deciding whether a delay in rendering a judgment on a motion is inordinate. In addition to noting that the determination is simply a judgment call, the courts have merely cited the general proposition that the trial court must not engage in any practices which "undercut" the implementation of the statutory scheme. See *State v. Wilson* (1982), 7 Ohio App.3d 219, 222, 7 OBR 281, 283, 454 N.E.2d 1348, 1351, quoting *State v. Pudlock* (1975), 44 Ohio St.2d 104, 106, 73 O.O.2d 357, 358, 338 N.E.2d 524, 525.

Notwithstanding the lack of exact criteria, a review of the various reported and unreported decisions indicates that the appellate court's judgment is based upon a consideration of the circumstances surrounding the filing of the motion. These factors include, *inter alia*, the nature of the motion itself, whether other motions are pending during the same period, and the presence of any extenuating circumstances which make ruling upon the motion extremely difficult.

An obvious example of the last factor can be found in this court's decision in *State v. Ross* (Nov. 21, 1986), Trumbull App. No. 3608, unreported, 1986 WL 13279. There, the defendant moved the trial court to suppress the tape recordings of statements he had made to fire investigators. The trial court did not rule upon this motion for approximately eight months. Nevertheless, this court held that the statutory time limit was tolled during this entire period, since the delay had been caused by the inability of the state to locate the equipment necessary to play the tapes.

In this case, appellant's motion to suppress was the only motion which was pending during the period in question. In addition, the motion raised only two issues for review by the trial court. In the absence of any indication in the record of any extenuating circumstances, a delay of one hundred nine days in ruling upon the motion was unreasonable. Cf. *Delaware v. Rannebarger* (June 7, 1984), Delaware App. No. 84–CA–2, unreported, 1984 WL 4915. Moreover, the fact that only fifty-four days of the statutory limit had expired before the motion was filed does not alter my analysis.

Accordingly, I believe that appellant's third assignment of error is well taken, and would reverse the decision of the trial court.