OPINION
This is an accelerated appeal taken from a final judgment of the Chardon Municipal Court. Appellant, David L. Burdick, appeals from his conviction for driving while under the influence of alcohol following the denial of his motions to suppress certain evidence and to dismiss the charges based on speedy trial grounds.
During the early evening of June 13, 1998, Sergeant Ross Nichols ("Sergeant Nichols") of the Geauga County Sheriff's Department was conducting stationary radar surveillance on U.S. Route 422 in Auburn Township. While doing so, Sergeant Nichols observed a vehicle being driven by appellant traveling at a high rate of speed. The officer clocked appellant's automobile traveling 68 m.p.h. in a 55 m.p.h. zone. Based on this, Sergeant Nichols decided to effectuate a traffic stop by pulling out behind appellant and activating his overhead lights. Rather than immediately stopping, however, appellant continued on for approximately three-fourths of a mile. Appellant finally pulled onto the berm after the officer bleeped his siren several times.
Sergeant Nichols radioed the vehicle description and license plate number into the dispatcher and then approached the driver's side window. Upon speaking with appellant, Sergeant Nichols indicated that the stop was predicated on a speeding violation, but that he only intended to issue a written warning to appellant. During this conversation, however, the officer noticed several indicia suggesting that appellant may have been under the influence of alcohol, to wit: a moderate odor of alcohol on appellant's person, glassy eyes, and sluggish movement when retrieving his driver's license.
Sergeant Nichols returned to his police cruiser in order to speak with dispatch regarding the status of the automobile and appellant's prior driving record. While waiting for the dispatcher to retrieve this information, he filled out the written warning form that he intended to give to appellant for the speeding violation. After verifying that appellant owned the car and that there were no outstanding warrants for his arrest, Sergeant Nichols returned to the vehicle and again spoke with appellant. The officer gave the written warning to appellant and then asked him to exit the vehicle in order to take field sobriety tests. Appellant complied with the request.
Sergeant Nichols administered the horizontal gaze nystagmus exam, the walk-and-turn test, and the one-legged stand. Appellant failed all of these tests; consequently, the officer placed appellant under arrest for driving while under the influence of alcohol. After handcuffing appellant and placing him in the back of the police cruiser, Sergeant Nichols later testified in court that he conducted what he believed to be a lawful search of the vehicle's interior incident to the arrest. This search yielded nothing of evidentiary value.
Upon being transported to the Geauga County Sheriff's Department, appellant consented to a Breathalyzer test which resulted in a reading of .201 grams of alcohol per two hundred ten liters of breath. Sergeant Nichols issued two citations to appellant: (1) driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1); and (2) driving with a prohibited concentration of alcohol in his breath in violation of R.C.4511.19(A)(3). At his initial appearance in the trial court, appellant pled not guilty to both charges.
On August 3, 1998, appellant filed a motion to suppress all evidence acquired after the initial stop for speeding, including the results of the field sobriety tests, any statements he made to Sergeant Nichols, the Breathalyzer analysis, and any evidence acquired during the search of the automobile. The motion was predicated upon appellant's contention that the sole purpose of the roadside detention was the issuance of the written warning for speeding. In support of this, appellant maintained that Sergeant Nichols initially told him that he was free to go after the written warning was issued. The officer then allegedly changed his mind by ordering appellant to exit the vehicle for the purpose of administering field sobriety tests. According to appellant, although the initial stop was constitutionally valid, Sergeant Nichols' continuing detention of him after issuing the written warning constituted an illegal seizure under the Fourth Amendment.
The trial court conducted a suppression hearing on August 21, 1998. Appellant and Sergeant Nichols testified during this proceeding. The trial court overruled the motion by judgment entry on September 29, 1998. Immediately thereafter, the clerk of court scheduled the case for trial on October 29, 1998.
On October 7, 1998, the prosecution filed a motion for a continuance of the trial. As grounds for the motion, the prosecutor indicated that Sergeant Nichols was previously scheduled to be out of the state from October 29, 1998 through November 9, 1998. In support of the motion, the prosecutor attached a memorandum from the officer in which the latter indicated the dates of his unavailability and the underlying reason. Subsequently, defense counsel filed two motions for the trial court's consideration. The first motion sought the discharge of appellant on speedy trial grounds based on the fact that he had not been brought to trial within ninety days of his arrest. The second motion was brought pursuant to Crim.R. 12(E) and requested that the trial court state its essential findings of fact on the record as to why the court denied the motion to suppress.
On October 9, 1998, the trial court granted the continuance requested by the state due to the unavailability of Sergeant Nichols on the original trial date. Pursuant to the entry, the matter was rescheduled for trial on November 19, 1998. In a separate entry issued the same day, the trial court denied appellant's motion for discharge. In doing so, the trial court noted that the filing of the motion to suppress tolled the running of the speedy trial statute such that the time for bringing appellant to trial had not yet expired.
The defense responded by filing a second motion to dismiss the charges based on speedy trial grounds on October 20, 1998. One week later, the trial court overruled this motion by judgment entry, while concurrently issuing findings of fact in relation to its prior denial of the motion to suppress.
On the scheduled trial date of November 19, 1998, appellant opted to plead no contest to driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1). The charge arising under R.C. 4511.19(A)(3) was dismissed by the trial court. Thereafter, the trial court sentenced appellant to a $1,000 fine and 90 days in jail, with $500 and 87 days suspended contingent upon appellant's compliance with the terms of probation. The trial court stayed execution of the sentence pending appeal.
From this judgment, appellant filed a timely notice of appeal with this court. He now asserts the following assignments of error:
 "[1.] The trial court committed prejudicial error and abused its discretion in overruling appellant's motion to suppress evidence obtained from sobriety testing, an arrest and search of appellants [sic] person and vehicle ancillary to an investigatory stop and issuance of a warning ticket to appellant for speeding.
 "[2.] The trial court committed prejudicial error and abuse of discretion in overruling appellant's motion to dismiss and discharge for failure to grant a speedy trial."
In his first assignment of error, appellant challenges the trial court's denial of his motion to suppress. Appellant contends that the evidence of his intoxication was the product of an illegal seizure because it was gathered after the issuance of the written warning for speeding and was not related to the initial purpose of the traffic stop. From appellant's perspective, therefore, the trial court erred by overruling his motion to suppress this evidence.
At a hearing on a motion to suppress, the trial court functions as the trier of fact. As such, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills
(1992), 62 Ohio St.3d 357, 366; State v. Smith (1991), 61 Ohio St.3d 284,288; State v. DePew (1988), 38 Ohio St.3d 275, 277;State v. Fanning (1982), 1 Ohio St.3d 19, 20.
On review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592,594; State v. Klein (1991), 73 Ohio App.3d 486, 488; State v.Carleton (Dec. 18, 1998), Geauga App. No. 97-G-2112, unreported, at 6, 1998 Ohio App. LEXIS 6163. After accepting such factual findings as accurate, the reviewing court must independently determine as a matter of law whether the applicable legal standard has been satisfied. Klein, 73 Ohio App.3d at 488; State v.Lillstrung (Sept. 18, 1998), Lake App. No. 97-L-290, unreported, at 7, 1998 Ohio App. LEXIS 4374.
In the case sub judice, it is apparent that appellant's entire argument under the first assignment of error is predicated upon his belief that any constitutionally permissible seizure of him terminated at the precise moment in time when Sergeant Nichols handed him the written warning for speeding. According to appellant, any continuing detention of him beyond that point in time was unwarranted because the sole purpose of the roadside stop was for the officer to warn appellant about speeding.
In support of this position, appellant cites various cases which stand for the proposition that after a police officer has issued either a traffic citation or a warning, it is unreasonable for the officer to detain the motorist further for the purpose of searching the motorist or the vehicle for weapons, drugs, or other contraband absent a reasonable and articulable suspicion that the person is carrying or transporting such items. See, e.g., State v. Retherford (1994), 93 Ohio App.3d 586; Statev. Beaton (Nov. 21, 1994), Warren App. No. CA94-03-036, unreported, 1994 WL 650048. According to appellant, these cases demonstrate that an investigatory detention must be carefully tailored and must last no longer than is necessary to effectuate the underlying purpose of the stop. Once the traffic citation or warning is issued, the intent behind the stop has been fulfilled. In other words, the lawfulness of an initial detention can not justify a subsequent fishing expedition for evidence of further crime unrelated to the purpose of the stop.
Appellant's argument in this regard is misdirected. Obviously, we agree that a police officer may not unilaterally expand the scope of an initial detention for a traffic violation beyond the original purpose underlying the stop in the absence of reasonable and articulable suspicion of further criminal activity. The officer, however, does not have to ignore that which he or she observes during the course of the legitimate traffic stop.
We note that Sergeant Nichols testified that he observed the indicia of intoxication prior to the issuance of the written warning for speeding. There was, therefore, credible evidence before the trial court that the officer had a reasonable and articulable suspicion of further criminal conduct on the part of appellant. Because the evidence of intoxication was gathered prior to or contemporaneous with the issuance of the written warning, Sergeant Nichols could certainly act on that evidence subsequent to handing such warning to appellant. Thus, the line of cases cited by appellant is easily distinguishable from the instant matter.[1]
This court has previously noted that there are three distinct stages in the typical drunk driving scenario: (1) the initial stop; (2) the request that the driver submit to field sobriety tests; and (3) the arrest. State v. Richards (Oct. 15, 1999), Portage App. No. 98-P-0069, unreported, at 5, 1999 Ohio App. LEXIS 4860. See, also, State v. Evans (1998), 127 Ohio App.3d 56,60. Even appellant concedes that the speeding violation provided Sergeant Nichols with a legitimate basis upon which to perform the traffic stop; therefore, he does not challenge the constitutionality of the initial stop.
Instead, appellant's argument goes to the propriety of the succeeding stages of the roadside detention. Consequently, our inquiry focuses primarily on whether Sergeant Nichols possessed the requisite reasonable suspicion to ask that appellant undertake the field sobriety tests and, subsequently, whether the officer had probable cause to arrest appellant for the offense of driving while under the influence of alcohol.
Sergeant Nichols clearly had a constitutional basis for the initial traffic stop. Appellant was driving well over the posted speed limit on the section of U.S. 422 on which he was stopped. Hence, it can not be disputed that Sergeant Nichols had probable cause to stop appellant for the purpose of issuing a traffic citation. As it turned out, Sergeant Nichols decided to issue only a written warning to appellant, rather than an actual citation. This fact has absolutely no impact on the constitutionality of the stop. See, e.g., Lillstrung, 1998 Ohio App. LEXIS 4374, at 14-15 (wherein this court held that the stop of a motorist and his ensuing arrest for driving while under the influence of alcohol were both constitutional, regardless of whether the police officer even cited the motorist for the underlying traffic violation which provided the basis for the initial detention).
Given the commission of a traffic offense, we have stated the following on numerous occasions:
 "This court has repeatedly held that a minor violation of a traffic regulation * * * that is witnessed by a police officer is, standing alone, sufficient justification to warrant a limited stop for the issuance of a citation. * * *
 "Once the officer has stopped the vehicle for some minor traffic offense and begins the process of obtaining the offender's license and registration, the officer may then proceed to investigate the detainee for driving under the influence if he or she has a reasonable suspicion that the detainee may be intoxicated based on specific and articulable facts, such as where there are clear symptoms that the detainee is intoxicated." (Citations and footnote omitted.) State v. Yemma (Aug. 9, 1996), Portage App. No 95-P-0156, unreported, at 2-3, 1996 WL 495076. See, also, Richards, 1999 Ohio App. LEXIS 4860, at 7; Carleton, 1998 Ohio App. LEXIS 6163, at 9-10; Lillstrung, 1998 Ohio App. LEXIS 4374, at 9-10.
After stopping the vehicle and speaking with appellant, Sergeant Nichols formed a reasonable suspicion that he was driving while under the influence of alcohol. The reasonableness of this conclusion was predicated on the moderate odor of alcohol on appellant's person, his glassy eyes, and the fact that he moved sluggishly when producing his driver's license for inspection. In light of these observations, Sergeant Nichols was more than justified in requesting that appellant undertake the standard battery of field sobriety tests.
As mentioned previously, appellant performed poorly on the horizontal gaze nystagmus exam, the walk-and-turn test, and the one-legged stand. Indeed, Sergeant Nichols testified at length during the suppression hearing as to the precise way in which appellant failed each divided attention skill test.
In any prosecution for drunk driving, the state does not have to prove actual impaired driving; instead, it must only show impaired driving ability. To prove impaired driving ability, the state can rely on physiological factors (e.g., odor of alcohol, bloodshot or glassy eyes, slurred speech) and coordination tests (e.g., field sobriety tests) to demonstrate that a person's physical and mental ability to drive is impaired. In re Litterst
(June 26, 1998), Lake App. Nos. 97-L-135 and 97-L-136, unreported, at 5, 1998 WL 556326; State v. Wargo (Oct. 31, 1997), Trumbull App. No. 96-T-5528, unreported, at 3, 1997 WL 703373.
In the instant case, appellant disputed some of Sergeant Nichols' testimony, particularly as to whether the officer initially stated that he was free to go after issuing the written warning. Appellant, however, conceded that he was unable to perform several of the roadside tests in the manner directed by Sergeant Nichols. Hence, there was ample evidence to support the trial court's finding that Sergeant Nichols had the required probable cause to place appellant under arrest. Such evidence included all of the aforementioned factors relating to appellant's appearance and actions during the roadside stop, to wit: the moderate odor of alcohol, the glassy eyes, the sluggish movement, and the failure of the field sobriety tests.
In arriving at this conclusion, we emphasize that Sergeant Nichols arrested appellant for driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1). This court has previously observed that "[u]nlike the objective standards used to define the per se violations of R.C.4511.19(A)(2) through (A)(4), a driving under the influence charge under R.C. 4511.19(A)(1) is generally proven through the more subjective observations of law enforcement officers." Wargo, 1997 WL 703373, at 4. See, also, In re Litterst, 1998 WL 556326, at 6. In light of this and the evidence adduced at the suppression hearing, the trial court correctly determined as a matter of law that Sergeant Nichols had probable cause to arrest appellant for driving while under the influence of alcohol.
The applicable legal standard was satisfied as a matter of law. The trial court did not err by denying the motion to suppress because appellant's rights under the Fourth Amendment were not violated. The first assignment is meritless.
In his second assignment of error, appellant posits that the trial court erred by overruling his two motions to dismiss the charges. According to appellant, the state did not bring him to trial within the statutorily prescribed time limit, thereby requiring his discharge from prosecution.
The right to a speedy trial is guaranteed by theSixth Amendment to the United States Constitution which provides in part that an accused "shall enjoy the right to a speedy and public trial[.]" See, also, Section 10, Article I of the Ohio Constitution. This federal constitutional right has been incorporated against the states through the operation of theFourteenth Amendment. State v. Broughton (1991), 62 Ohio St.3d 253,256, citing Klopfer v. North Carolina (1967), 386 U.S. 213,222-223.
The Ohio speedy trial statutes, R.C. 2945.71 et seq., were enacted as a means of giving effect to the constitutional guaranty of a speedy trial. Broughton, 62 Ohio St.3d at 256. Pursuant to R.C. 2945.71, the time within which an accused must be brought to trial in a misdemeanor case or accorded a preliminary hearing in a felony case is measured from the date of the arrest or the service of summons. It provides in part:
 "(B) A person against whom a charge of misdemeanor, other than a minor misdemeanor, is pending in a court of record, shall be brought to trial:
"* * *
 "(2) Within ninety days after his arrest or the service of summons, if the offense charged is a misdemeanor of the first or second degree, or other misdemeanor for which the maximum penalty is imprisonment for more than sixty days."
In the case at bar, appellant was charged with driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1). This is a misdemeanor of the first degree. The state, therefore, was statutorily obligated to bring appellant to trial within ninety days of the date of his arrest once formal charges were actually pending against him. Formal charges were filed against appellant when Sergeant Nichols issued the two citations to him on the evening of the arrest. Thus, the statutory time for bringing appellant to trial commenced on the date of his arrest.
Sergeant Nichols arrested appellant on June 13, 1998. As an initial matter, the state had to try appellant on the charges by September 11, 1998 under the ninety-day time period mandated by R.C. 2945.71(B)(2).
R.C. 2945.72, however, contains an exclusive list of reasons which toll the time when calculating the speedy trial date under R.C. 2945.71. Among the categories set forth in R.C. 2945.72
are as follows:
 "The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
"* * *
 "(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
"* * *
 "(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]"
The time for bringing appellant to trial was extended by the operation of R.C. 2945.72(E) and (H). Specifically, R.C. 2945.72(E) acted to toll the speedy trial time during the interval from August 3, 1998 through September 29, 1998 as the trial court ruled on appellant's motion to suppress. The trial court then reasonably granted a continuance based on the unavailability of Sergeant Nichols, thereby tolling the time from October 29, 1998 through November 9, 1998 under R.C. 2945.72(H). We will explain the reasons underlying each tolling period.
As described previously, appellant filed a pretrial motion to suppress on August 3, 1998. It is uncontroverted that such a motion functions to toll the time in which a defendant must be brought to trial pursuant to R.C. 2945.72(E). State v. Beam
(1991), 77 Ohio App.3d 200, 207, citing State v. Angstrom (Mar. 11, 1988), Geauga App. No. 1392, unreported, 1988 WL 32959. Unquestionably, the statutory time for bringing appellant to trial was automatically tolled as of the date the motion to suppress was filed.
The trial court conducted a suppression hearing on August 21, 1998, at which time both appellant and Sergeant Nichols testified as to the events leading up to the arrest. Thereafter, the trial court took the matter under consideration before issuing its ruling on the motion on September 29, 1998.
This court has previously observed that a trial court does not have unbridled discretion over the amount of time it may take to rule on a defense motion. See State v. Ritter (Dec. 17, 1999), Ashtabula App. No. 98-A-0065, unreported, at 9, 1999 Ohio App. LEXIS 6100. A strict adherence to the spirit of the speedy trial statutes requires the trial court to rule on such motions as expeditiously as possible.
In other words, R.C. 2945.72(E) does not operate to extend unconditionally the time in which a trial must be conducted after the accused has filed a defense motion. Rather, it provides for an extension of time only for that period of delay "necessitated" by reason of a motion instituted by the accused.Id. at 9-10. Indeed, we have previously held that the tolling period embodied by R.C. 2945.72(E) is subject to a requirement of reasonableness. Id. at 10, citing State v. McNutt (Sept. 20, 1996), Ashtabula App. No. 96-A-0019, unreported, 1996 WL 586430.
There are no specific criteria to apply when considering the reasonableness of a delay in ruling on a defense motion. The determination of whether a delay was inordinate is simply a judgment call. Careful consideration, though, must be given to the particular circumstances surrounding the case and the filing of the motion. An appellate court should consider all factors, including, inter alia, the nature of the motion itself, whether other motions were pending during the same period, and the presence of any extenuating circumstances which made ruling upon the motion extremely difficult. Ritter, 1999 Ohio App. LEXIS 6100, at 10-11.
In the case sub judice, the speedy trial time was properly tolled from August 3, 1998 through September 29, 1998. This period encompassed the filing of the motion to suppress, the holding of an evidentiary hearing, and an appropriate amount of time for the trial court to contemplate its judgment. This was a reasonable delay necessitated by the defense motion.
We now turn to the state's motion for a continuance. It is well-settled that a continuance granted other than upon the accused's own motion must be both reasonable and necessary before the time for a speedy trial is properly tolled under R.C.2945.72(H). State v. Saffell (1988), 35 Ohio St.3d 90, 91; Aurorav. Patrick (1980), 61 Ohio St.2d 107, 109.
In this case, the state sought a single continuance based on the unavailability of Sergeant Nichols, who had been subpoenaed to testify at appellant's trial. For obvious reasons, Sergeant Nichols was the crucial prosecution witness. It was he who effectuated the traffic stop, performed the field sobriety tests, and ultimately decided that there was probable cause upon which to arrest appellant for driving while under the influence of alcohol.
The record clearly demonstrates that the prosecutor immediately filed the motion for a continuance upon being notified by Sergeant Nichols that the latter would be out of the state due to a previously planned trip on the originally scheduled trial date of October 29, 1998. The motion and attached explanation were submitted on October 7, 1998, more than three weeks prior to the slated trial, and they set forth with specificity why the continuance was necessary.
Upon consideration, the trial court granted the motion, and the trial was pushed back only three weeks on the court's docket until November 19, 1998. The trial court filed the judgment entry granting the continuance prior to the expiration of the ninety-day time limit prescribed in R.C. 2945.71. Thereafter, appellant filed a second motion to dismiss the charges based on speedy trial grounds on October 20, 1998. It was also overruled.
This court has previously recognized that a motion for a continuance filed by the state may be reasonable if a police officer who is scheduled to testify will be unavailable on the trial date due to a vacation or for other good cause shown. SeeRitter, 1999 Ohio App. LEXIS 6100, at 13. Other courts have held likewise. See, e.g., State v. Menke (May 18, 1988), Montgomery App. No. 10735, unreported, at 1, 1988 WL 53916 (holding that the unavailability of the arresting officer on the originally scheduled trial date was a reasonable ground for granting a continuance). The Supreme Court of Ohio has also endorsed this principle. See, e.g., Saffell, 35 Ohio St.3d at 91 (holding that it was reasonable for the trial court to grant a continuance beyond the ninety-day speedy trial limit based in part on the fact that the arresting officer was to be on vacation on the originally scheduled trial date).
In the instant matter, the continuance of appellant's trial due to the unavailability of Sergeant Nichols was both reasonable and necessary under the circumstances. As a result, the time for a speedy trial was properly tolled from October 29, 1998 through November 9, 1998 (i.e., the period during which Sergeant Nichols was unavailable).
The matter then came on for trial on November 19, 1998. At that time, appellant opted to plead no contest to violating R.C. 4511.19(A)(1). The plea hearing represented the terminus of the running of the time for appellant's speedy trial under R.C.2945.71.
Upon review, it is obvious that appellant was brought to trial within the allotted ninety days. The accumulation of speedy trial days over the course of 1998 was as follows: fifty days from June 14 (the day after appellant's arrest) through August 2 (the day before appellant filed his motion to suppress); twenty-nine days from September 30 (the day after the trial court ruled on the motion to suppress) through October 28 (the day before the continuance took effect due to Sergeant Nichols' unavailability); ten days from November 10 (the day that Sergeant Nichols became available again) through November 19 (the day of appellant's plea hearing). This amounted to eighty-nine speedy trial days. Hence, the state brought appellant to trial within the time allowed by R.C. 2945.71(B)(2). The second assignment is not well-taken.
Based on the foregoing analysis, the assignments of error lack merit. Accordingly, the judgment of the trial court is affirmed.
 _________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., NADER, J., concur.
[1] We would also note that appellant cites the recent United States Supreme Court case of Knowles v. Iowa (1998),525 U.S. 113, in support of his first assignment of error. InKnowles, an Iowa police officer stopped a motorist for speeding, issued a citation rather than arresting the driver, and then discovered a bag of marijuana and a pot pipe upon conducting a full automobile search absent either the driver's consent or reasonable suspicion of criminal conduct. The search was executed pursuant to an Iowa statute which ostensibly authorized the full search of an automobile and driver in those instances where the police officer elected to issue a citation, rather than effectuating a custodial arrest (i.e., a search incident to citation). The United States Supreme Court reversed the defendant-motorist's conviction upon concluding that such a search was unconstitutional under the Fourth Amendment. Again, however, it is readily apparent that Knowles is distinguishable from the case at bar. In the matter on appeal, Sergeant Nichols had reasonable suspicion of additional criminal activity which justified the continuing detention of appellant. Moreover, to the extent that appellant is heard to complain about the search of his vehicle, Sergeant Nichols only conducted such an inspection after placing appellant under arrest for driving while under the influence of alcohol. In other words, it was a search incident to an arrest, not merely incident to the issuing of a citation.