OPINION
This timely appeal arises from a trial court judgment suppressing statements made by Appellee, Shawn Clemens. For the following reasons, we affirm the judgment of the trial court.
At approximately 7:15 a.m. on January 7, 1998, the trailer home of Joseph and Tammy Browning caught fire. Joseph Browning died of smoke inhalation while Tammy Browning escaped with serious injuries. At 9:39 a.m. that morning Deputy Ed Pfouts of the Jefferson County Sheriff's Department was dispatched to question Appellee Shawn Clemens, the Brownings' neighbor, regarding the fire. Pfouts transported Appellee to the old Jefferson County Jail. From there, Lt. Frank Noble transported Appellee to the new Justice Center for questioning by Sheriff Fred Abdalla. During questioning, Appellee made statements that he had set the Browning trailer on fire and that he had attempted to do so in the past. No part of the interview was recorded and the record contains only a transcription of Sheriff Abdalla's notes from the interview.
On January 9, 1998, Appellee was indicted on one count of aggravated murder in violation of R.C. § 2903.01(B) with a death specification pursuant to R.C. § 2929.04(A)(7). In addition, Appellant was charged with one count of attempted aggravated murder in violation of R.C. §§2903.01(B) and 2923.02, one count of aggravated arson in violation of R.C. § 2909.02(A)(1) and one count of aggravated arson in violation of R.C. § 2909.02(A)(2).
On October 29, 1998, Appellee filed a motion to suppress any statements he made to Sheriff Abdalla on January 7, 1998. Appellee argued that he suffered from severe mental incapacity at the time he was questioned and therefore his waiver of Miranda rights was not voluntarily, knowingly or intelligently made. Hearing on the motion began on December 1, 1998, and was continued until March 26, 1999, in order for Appellant, State of Ohio, to obtain an expert witness.
Following the conclusion of testimony, the trial court filed a judgment entry on March 30, 1999, sustaining Appellee's motion to suppress the statements he made to the sheriff. The trial court reasoned that Appellee lacked the capacity to knowingly and voluntarily waive his constitutional rights. The trial court filed a nearly identical nunc pro tunc order on April 1, 1999. On April 1, 1999, Appellant filed a notice of appeal pursuant to Crim.R. 12(J).
Appellant raises two assignments of error which we will jointly address as they warrant the application of the same standard of review. Appellant's first assignment of error alleges:
 "THE TRIAL COURT ERRED BY FAILING TO USE A TOTALITY OF THE CIRCUMSTANCES TEST IN DETERMINING WHETHER OR NOT THE DEFENDANT APPELLANT VOLUNTARILY WAIVED HIS MIRANDA WARNINGS."
Appellant argues that when deciding a motion to suppress, a trial court must consider the totality of the circumstances surrounding the interrogation to determine whether the defendant made an uncoerced choice in waiving rights and had the "requisite level of comprehension" of the consequences of his decision to abandon those rights.
Colorado v. Spring (1987), 479 U.S. 564, 573; State v. Broom (1988),40 Ohio St.3d 277. Appellant states two propositions of law to support his argument. Appellant's first proposition of law states:
 "THE TRIAL COURT IMPROPERLY BASED ITS DECISION TO SUPPRESS THE DEFENDANT'S STATEMENT SOLELY UPON THE DEFENDANT'S ALLEGED MENTAL CONDITION."
Appellant argues that in determining the validity of a waiver of rights, a court must engage in a two part analysis. First, the waiver must be voluntary in a sense that it was not influenced by intimidation, coercion or deception. Moran v. Burbine (1986), 475 U.S. 412, 421. Second, the court must determine whether the waiver was made with, "* * * full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id.
It is uncontested that the trial court expressly stated in its journal entry that Appellee's statement was not a product of police coercion. Appellant states that the trial court suppressed Appellee's statements because it found that Appellee was suffering from thought disorders and was incapable of giving a knowing and intelligent waiver. Appellant argues that the trial court erroneously focused on expert testimony that because Appellee had a serious mental illness he "automatically" was not competent to waive his rights. (Tr. p. 383). Appellant contends that there is no evidence on the record that the trial court considered anything other than the isolated conclusions of experts who testified that Appellee lacked the capacity to waive his Constitutional rights.
Appellant's second proposition of law states:
 "MENTAL ILLNESS DOES NOT PER S.E. PRECLUDE THE ADMISSION OF A CONFESSION."
Appellant asserts that a mentally ill person can be competent to validly waive constitutional rights. Appellant states that in the present case, Appellee's own expert admitted that a psychotic person would be able to function and think. (Tr. pp. 450, 452). Appellant points to testimony that when being questioned Appellee was oriented as to time and place and identified his inquisitor by name. (Tr. p. 23). There was also testimony that Appellee knew the names of the President of the United States, the Jefferson County Prosecutor and the owners of Appellee's trailer park. (Tr. p. 23). Upon questioning Appellee was able to state two addresses, his date of birth, his height, his social security number and his phone number. (Tr. p. 22). Appellant also states that Appellee's own expert testified that Appellee was oriented when questioned by the sheriff. (Tr. p. 304).
Appellant states that Appellee made written and oral waivers of his rights and that he demonstrated no conduct that could be construed to be a misunderstanding of his rights. Appellant argues that Appellee's age, background, intelligence and other factors support that Appellee had the mental capacity to know, understand and waive his rights. State v. Hall
(1976), 48 Ohio St.2d 325, 333, vacated in part 438 U.S. 910.
Appellee responds that Appellant focuses on the issue of voluntariness rather than the real issue, whether Appellee's waiver was knowing and intelligent. State v. Scott (1980), 61 Ohio St.3d 155. According to Appellee, lack of mental acuity or mental illness can interfere with an accused's ability to give a knowing and intelligent waiver of his rights.
Appellant's second assignment of error alleges:
 "THE STATE OF OHIO PROVED BY A PREPONDERANCE OF THE EVIDENCE THAT UNDER THE TOTALITY OF THE CIRCUMSTANCE THE DEFENDANT KNOWINGLY, INTELLIGENTLY AND WITH UNDERSTANDING WAIVED HIS MIRANDA RIGHTS ON JANUARY 7, 1998."
Appellant states that whether a suspect has made a valid waiver of his constitutional rights is determined by applying the totality of the circumstances standard. State v. Clark (1988), 38 Ohio St.3d 252, 261. Appellant asserts that Sheriff Abdalla read Miranda warnings to Appellee twice and that Appellee twice stated affirmatively that he understood his rights. (Tr. pp. 20-21, 39-41). According to Appellant, an accused's responding affirmatively that he understands his rights weighs in favor of an intelligent waiver. State v. Beam (1991), 77 Ohio App.3d 200,203-204. Appellant also states that Appellee initialed each line on a written Miranda warning form, indicating that he understood his rights, and signed the waiver of rights. According to Appellant, a signed written waiver is strong proof of a valid waiver. State v. Clark, supra.
Appellant points to Appellee's testimony that he knew the Miranda warnings prior to and after he was questioned and that he knew he did not have to speak to officers and that he could have an attorney present. (Tr. p. 61). Appellant also states that Appellee's psychologist testified that Appellant was able to understand his rights. (Tr. p. 289). Moreover, Appellant reiterates that all of the expert testimony indicated that Appellee was of average intelligence and that he could read beyond the high school level. (Tr. pp. 284-285, 370, 373-375, 445).
Appellee responds that the evidence presented supported the trial court's conclusion that Appellee's waiver was not knowing and intelligent. Appellee points to testimony that prior to waiving his rights, Appellee was acting "weird," was "mumbling to himself," "talking nonsense" and acting "bizarre" and "peculiar." (Tr. pp. 10, 14, 92, 141, 154). Appellee's mental health case manager stated that the day after Appellee made his statement, he did not appear to be med-compliant and that Appellee had a history of not taking his medication. (Tr. pp. 167, 194). There was also testimony that if Appellee failed to take his medication he would not be able to concentrate, comprehend or understand and would hear voices. (Tr. pp. 192, 194, 195, 203).
Appellee also cites the testimony of his expert witness who concluded within a reasonable degree of psychological certainty that Appellee could not have made an intelligent waiver of his rights on the day in question. (Tr. p. 283). Moreover, Appellee relies on the testimony of an expert originally retained by Appellant to conduct an independent investigation who agrees that on the date in question, Appellee was not able to give a knowing, intelligent and voluntary waiver of his rights. (Tr. p. 443). Based on the record herein, we find that the assignments of error advanced by Appellant lack merit.
An appellate court will not disturb a trial court's decision on a motion to suppress when it is supported by competent, credible evidence.State v. Winand (1996), 116 Ohio App.3d 286, 288, citing Tallmadge v.McCoy (1994), 96 Ohio App.3d 604, 608. An appellate court accepts the trial court's findings of fact if they are supported by competent, credible evidence. State v. Kobi (1997), 122 Ohio App.3d 160, 168, citingState v. Guysinger (1993), 86 Ohio App.3d 592, 594. While accepting that the facts as found by the trial court are true, we must, "* * * independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts meet the legal standards * * *" applicable to the case. State v. Brown (1996), 116 Ohio App.3d 477,481.
The issue here is the validity of Appellee's waiver of his constitutional rights, as that was the only issue decided by the trial court. Specifically, the trial court determined that Appellee, "* * * was incapable of giving a knowing and intelligent waiver of his Miranda
rights * * *." The Fifth Amendment to the United States Constitution provides that no person shall be compelled to be a witness against himself. Thus, prior to any custodial interrogation, a person must be warned that he has a right to remain silent, that any statement he does make may be used against him and that he has the right to the presence of retained or appointed counsel during questioning. Miranda v. Arizona
(1966), 384 U.S. 436, 444. These rights may be waived, provided the waiver is made voluntarily, knowingly, and intelligently. Id. See, also,Michigan v. Tucker (1974), 417 U.S. 433, 444. It is well settled that the state carries the burden of demonstrating a valid waiver of Miranda rights by a preponderance of the evidence. Tague v. Louisiana (1980),444 U.S. 469, 471. Moreover, the trial court's determination must be made in light of the totality of the circumstances. State v. Clark, supra, 261, citing Fare v. Michael C. (1979), 442 U.S. 707; State v. Edwards
(1976), 49 Ohio St.2d 31, vacated in part 438 U.S. 911.
In the present matter, we must agree with Appellee that Appellant has inordinately focused its argument on the voluntariness of Appellee's waiver of rights. It is clear that the waiver must be both voluntary and
knowing and intelligent. Miranda v. Arizona, supra, 444; Michigan v.Tucker, supra, 444. The Ohio Supreme Court extensively addressed the issue of the validity of a waiver of Miranda rights in State v. Dailey
(1990), 53 Ohio St.3d 88. The Court stated:
 "In Miranda the court recognized that custodial interrogations by their very nature generate `compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.' [Id., 467; Moran v. Burbine, supra, 420,]. To combat this inherent compulsion and thereby protect a suspect's Fifth Amendment privilege against self-incrimination, the Supreme Court has held that a suspect may effectively waive the rights conveyed in the Miranda warnings only if the waiver is made voluntarily, knowingly and intelligently. [Miranda, 444].
"The inquiry whether a waiver is coerced has two distinct dimensions. `First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have beenmade with a full awareness of both the nature of the right beingabandoned and the consequences of the decision to abandon it.' [Moran v.Burbine, supra, 421; Colorado v. Spring, supra 573, emphasis added]. `Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.' [Moran v. Burbine, 422-423.]
State v. Dailey, 91. As regards the "voluntariness" of a waiver of rights, the Supreme Court stated:
 "A suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. [Colorado v. Spring, supra, 574]. Thus, coercive police activity is a necessary predicate to finding that a confession is not voluntary within the Fifth Amendment, on which Miranda was based. [Emphasis added][Colorado v. Connelly (1986), 479 U.S. 157, 170].
"In Colorado v. Connelly, supra, the Colorado Supreme Court, relying on evidence that the defendant was suffering from chronic schizophrenia and was in a psychotic state at least as of the day before his confession, held that the United States Constitution requires that his confession be suppressed because the defendant's mental state at the time of his confession interfered with his `rational intellect' and `free will.' [Id., 159]. The United States Supreme Court reversed and held that while a defendant's `mental condition [may be a] * * * significant factor in the `voluntariness' calculus[,] * * * [it] does not justify a conclusion that * * * [the] mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional `voluntariness.' [Colorado v. Connelly, supra, 164]."
State v. Dailey, 91-92.
The preceding definitely supports Appellant's position that Appellee's mental state did not necessarily affect the voluntariness of his waiver of rights. The trial court concluded that, "[t]his suppression does not arise from any misconduct of the interrogating officers as there was no misconduct." (Judgment Entry 4/1/99 p. 5). We must accept this factual determination as it is supported by competent evidence. State v. Kobi,supra, 168. The record contains no evidence of any coercion or deception by police officers. Appellee questions the fact that Sheriff Abdalla did not make a recording of his interrogation and that Appellee's inculpatory statements exist only as a transcription of Abdalla's notes from the interview. While this may affect the credibility of the statements, it does not affect the voluntariness of Appellee's waiver.
However, that is only part of the analysis of the validity of the waiver. Whether or not it was voluntarily made, Appellee must have, "* * * a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." State v. Dailey,supra, 91; Moran v. Burbine, supra, 421; Colorado v. Spring, supra 573. The trial court's conclusion stated in its April 1, 1999 judgment entry that Appellee, "* * * was incapable of giving a knowing and intelligent waiver of his Miranda rights on January 7, 1998 * * *" is supported by the record. See, State v. Kobi, supra, 168.
We must note here that the journal entry indicates that the trial court considered the totality of the circumstances, contrary to Appellant's contention. The trial court considered testimony of Appellee's demeanor prior to and during interrogation, testimony concerning his behavior the day before his interrogation, as well as the substantial expert psychological testimony. (Judgment Entry 4/1/99).
As Appellee contends, the record is replete with examples of his peculiar behavior about the time of his waiver. (Tr. pp. 10, 14, 92, 141, 154). The record also contains testimony that Appellee was likely not in compliance with his medication needs at relevant times and that Appellee had a history of not taking his medication. (Tr. pp. 167, 194). The record also contains credible testimony that Appellee's failure to take his medication would result in incapacity to concentrate, comprehend or understand and in auditory hallucination. (Tr. pp. 192, 194, 195, 203).
Most importantly, the record contains the testimony of Appellee's expert witness who concluded within a reasonable degree of psychological certainty that Appellee could not have made an intelligent waiver of his rights on the day in question. (Tr. p. 283). That expert stated with respect to Appellee's ability to understand his rights, "[t]he real problem comes in his being able to appreciate that and being able to then intelligently use that information in the process of making a rational reasoned reasonable decision. So where I see the problem is his mental illness has impaired his ability to intelligently waive." (Tr. p. 283). Likewise, as Appellee advances, an expert originally retained by Appellant to conduct an independent investigation agreed that on the date in question Appellee was not able to give a knowing, intelligent waiver of his rights. (Tr. p. 443).
As the record supports the trial court's factual conclusion and as that conclusion is consistent with the applicable legal standard, we must hold that the trial court did not abuse its discretion in granting Appellee's motion to suppress. State v. Kobi, supra, 168; State v. Brown, supra,
481. Accordingly, Appellant's assignments are overruled and the judgment of the trial court is affirmed.
Donofrio, J., concurs, Vukovich, P.J., concurs.
 __________ WAITE, J.