JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, David Stevens ("appellant"), appeals from his convictions for three counts of robbery with a firearm specification, carrying a weapon under a disability and carrying a concealed weapon. For the reasons set forth below, we affirm.
 {¶ 2} On April 7, 2005, the Cuyahoga County Grand Jury indicted appellant on six counts. The first three counts alleged robbery in violation of R.C. 2911.01. Count Four alleged felonious assault in violation of R.C. 2903.11. Each of the first four charges contained a one and three year firearm specification in violation of R.C. 2941.141 and 2941.145, respectively. Count Five of the indictment alleged appellant had a weapon while under a disability in violation of R.C. 2923.13. Count Six alleged appellant carried a concealed weapon in violation of R.C.2923.12. On April 12, 2005, appellant was arraigned and pleaded not guilty to all charges.
 {¶ 3} On April 15, 2005, the trial court scheduled the first pre-trial for April 27, 2005. On April 19, 2005, appellant filed a request for discovery and bill of particulars. The state responded to appellant's demand for discovery and bill of particulars on April 26, 2005 and filed a reciprocal demand for discovery.
 {¶ 4} The first pre-trial was held on April 27, 2005. At this pre-trial, appellant requested a continuance and another pre-trial, which was scheduled for May 11, 2005.
 {¶ 5} At that pre-trial, appellant requested a continuance until May 25, 2005 for another pre-trial. Additionally, the trial court set a trial date of June 29, 2005.
 {¶ 6} On May 24, 2005, a pre-trial was held and appellant once again requested a continuance and further pre-trial. The trial court granted the continuance and a pre-trial was scheduled for June 9, 2005. That pre-trial was held and the trial date remained for June 29, 2005.
 {¶ 7} On the trial date of June 29, 2005, the trial court was engaged in the case of State of Ohio v. Krug, Case No. 05-461670. The case of State of Ohio v. Thomas Krug commenced on June 27, 2005 and concluded on July 1, 2005. On July 6, 2005, appellant requested a continuance until July 12, 2005. The trial court granted the continuance.
 {¶ 8} On July 12, 2005, the trial court called the case for trial, summoned a jury, and gave them preliminary instructions. On July 13, 2005, appellant requested a continuance so that his current attorney could be discharged and a new retained attorney be permitted to represent him. The trial court granted his request for continuance. As a result of appellant's request for continuance, on July 13, 2005, appellant executed a written waiver of speedy trial time beginning on July 13, 2005 and expiring on December 31, 2005.
 {¶ 9} On November 2, 2005, appellant filed a motion to dismiss charges and discharge defendant from custody based upon the Ohio speedy trial statute. The trial court denied appellant's motion on November 15, 2005, with conclusions of fact and law given on November 16, 2005.
 {¶ 10} The trial of this matter commenced on November 15, 2005. Appellant exercised his right to a jury trial for counts 1 through 4 and waived a jury for counts 5 and 6.
 {¶ 11} At trial, the evidence presented established the following facts. Around dusk on March 27, 2005, John Chandler ("Chandler"), 17 years old at the time of the incident, was walking to his mother's house while on his cell phone. When he reached East 127th Street somewhere between Oakfield and Benham in the city of Cleveland, a male, Chandler identified as appellant, approached him and pointed a gun in his left side. Appellant then said to Chandler, "You know what this is?" Appellant told Chandler to keep walking and took him behind a big tree. Another male was with appellant and standing a few feet away.
 {¶ 12} While behind the tree, appellant ordered Chandler to hangup his cell and give him everything in his pockets and the cell phone. Chandler complied with appellant's demands and handed him the dollar in his pocket, a candy bar, his cell phone and a cell phone charger. Subsequently, Chandler ran from appellant towards his mother's house.
 {¶ 13} As he was running, Chandler heard four or five gun shots ringing behind him. At first, Chandler testified that he looked behind him and saw appellant shooting the gun in his direction. Upon cross-examination, he testified that he did not see appellant point the gun in his direction. Chandler kept running down Union Street towards his mother's house. When he arrived, he telephoned the police.
 {¶ 14} Landus Reed ("Reed") and his friend Anthony Sutton ("Sutton") testified that on March 27, 2005, also during the dusk hours, the two left dinner at Reed's aunt's house and traversed down 110th Street towards Union Street on the way to a friend's house nearby. While walking, they saw appellant, with another male, who was short and wearing a black scull cap and black hoodie, walking towards them. Upon approaching Reed and Sutton, appellant bumped into Sutton, who was talking on his cell phone. Appellant pulled out a gun and said to Sutton, "You already know what this is." Appellant ordered Sutton to get off his cell phone.
 {¶ 15} The other male then stated to Reed and Sutton, "If you yell or say anything, I'm going to punch you in your mouth." Appellant pointed the gun in Sutton's chest and then poked Sutton in the face with the gun. Sutton testified that the gun was warm to the touch. Next, appellant ordered Sutton to empty his pockets. Sutton retrieved money from his pocket and handed it, along with his cell phone, to appellant.
 {¶ 16} While appellant was robbing Sutton, the other male, wearing black, robbed Reed. Prior to robbing him, the male stated to Reed, "Don't say a word. You know what this is." Reed retrieved his wallet and $10 and handed it to the male wearing black. Reed also took out his cell phone and tossed it into the grass. The male grabbed the wallet and money and ran off.
 {¶ 17} After taking Sutton's belongings, appellant told Sutton to run. Reed looked up and saw Sutton running down the street. Appellant then told Reed to start running and Reed complied. Reed ran down the street until he could no longer see appellant. He then returned to the scene of the robbery and retrieved his cell phone from the grass. He called his mother from his cell phone at the scene of the incident. Afterwards, he returned to his aunt's house.
 {¶ 18} After the robbery, Sutton ran to his neighbor's house and telephoned the police. Subsequently, he went across the street to Reed's aunt's house and Reed's parents called Sutton's parents.
 {¶ 19} Officer Williams and his partner, Officer Mooneyham, received a dispatch that multiple robberies had occurred in the area of 110th Street and Union. The description of the suspects was one light-skinned African-American male, about six foot tall, with a receding hairline and wearing gray sweat pants and sweatshirt. The other suspect was an African-American male wearing a black coat, blue jeans and a black hoodie.
 {¶ 20} In response to the dispatch, Officer Williams and Mooneyham patrolled the area of 108th, 110th Street and Union. There, the officers spotted a six foot tall, African-American male, with a receding hairline, wearing a gray sweatshirt at the corner of 108th Street and Union. Officer Williams and Mooneyham also noticed that the male, later identified as appellant, was sweating profusely. Officer Williams and Mooneyham approached the male in order to conduct a field investigation.
 {¶ 21} Upon approaching him, appellant ran away, heading eastbound on Union. The officers ran after appellant. During the pursuit, Officer Williams witnessed appellant retrieve a gun from his pocket and throw it on the ground. The officer continued his pursuit of appellant and apprehended him shortly thereafter at 110th Street and Union. There, Officers Williams and Mooneyham arrested appellant.
 {¶ 22} Shortly thereafter, Officer Littell and Moten arrived at the scene of the arrest and Williams informed Officer Littell that appellant dropped a gun near the corner of 108th Street and Union. Officer Littell went to this location, as did an Officer Varndell, who found the gun in the grass near the location identified by Officer Williams. The officers secured the gun at that time.
 {¶ 23} Subsequently, Officer Littell and Moten returned to Chandler's home to interview him. Chandler informed the officers of the circumstances surrounding the robbery and described appellant to the police as a light-skinned African-American male with a receding hairline who wore a gray sweatshirt and gray jogging pants. He further described the gun that appellant brandished as being black and silver.
 {¶ 24} After interviewing Chandler, the police transported him to a parking lot at 108th Street. While in the police vehicle, the police shined a light on appellant, who was 50 feet from the police vehicle. Chandler identified appellant as the person who robbed him. Chandler noted that, at the time of the identification, appellant was wearing a gray hoodie and sky-blue jeans. He testified that he recognized the gun police retrieved as the gun that appellant pointed at him.
 {¶ 25} In the meantime, the police arrived at Reed's aunt's house. Reed and Sutton informed the police of the incident and gave a description of appellant. Sutton described appellant as a light-skinned African-American male, about six foot tall, wearing gray sweat pants and a gray hoodie with a jacket over it. Reed testified that he told police that appellant was wearing a gray hoodie underneath a goldish jacket and light jeans. He further described appellant as a tall, light-skinned African-American male with a receding hairline.
 {¶ 26} After giving the police the description of appellant, the police informed the boys that they had appellant down the street. Reed's parents drove the two boys to the scene of the arrest. While at the scene, the two boys informed the police that appellant was the man that robbed them.
 {¶ 27} At the close of the state's case, appellant moved for a Crim.R. 29 motion for acquittal as to all charges. The trial court granted appellant's motion as to the felonious assault charge only. Appellant then rested his case.
 {¶ 28} On November 17, 2005, the jury returned a guilty verdict on the first three counts of the indictment and the two firearm specifications. The trial court found appellant guilty of carrying a weapon under a disability and carrying a concealed weapon.
 {¶ 29} The court then proceeded to sentence appellant to eight years total at the Lorain Correctional Institution. More specifically, on the robbery charges, the court sentenced appellant to five years. In addition, the court sentenced appellant to three years for the firearm specifications to run consecutive to the robbery charges. On the charges for carrying a weapon under a disability and carrying a concealed weapon, the court sentenced appellant to one year on each of those charges, each to be served concurrently with each other as well as concurrently to the robbery charges.
 {¶ 30} Appellant now appeals his convictions and asserts two assignments of error for our review. Appellant's first assignment of error states:
 {¶ 31} "The trial court erred in denying the appellant's motion to dismiss for want of speedy trial."
 {¶ 32} Our standard of review upon an appeal raising a speedy trial issue is to simply count the days as directed in R.C.2945.71 et seq. Cleveland v. Seventeenth St. Assoc. (Apr. 20, 2000), Cuyahoga App. No. 76106; State v. Saikus (Mar. 12, 1998), Cuyahoga App. No. 71981. Where we find ambiguity, we construe the record in favor of the accused. State v. Mays
(1996), 108 Ohio App.3d 598, 609, 671 N.E.2d 553; State v.Singer (1977), 50 Ohio St.2d 103, 109, 362 N.E.2d 1216.
 {¶ 33} Appellant contends that he is entitled to discharge pursuant to R.C. 2945.71 through 2945.73, the Criminal Code's speedy trial provisions. R.C. 2945.73 provides as follows: "(B) Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and2945.72 of the Revised Code."
 {¶ 34} R.C. 2945.71 provides in pertinent part:
 {¶ 35} "(C) A person against whom a charge of felony is pending:
 {¶ 36} "* * *
 {¶ 37} "(2) Shall be brought to trial within two hundred seventy days after his arrest.
 {¶ 38} "* * *
 {¶ 39} "(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. This division does not apply for purposes of computing time under division (C)(1) of this section."
 {¶ 40} In other words, a felony defendant in Ohio must be tried within 90 days if incarcerated on the pending charge or within 270 days if on bail. R.C. 2945.71(C)(2) and (E). The triple-count provision only applies when the person is being held in jail solely on the pending charge. State v. MacDonald
(1976), 48 Ohio St.2d 66, 71, 357 N.E.2d 40.
 {¶ 41} In the case sub judice, appellant is entitled to the triple-count provision because he was being held solely on the pending charges. Thus, the state was required to bring appellant to trial within 90 days of his arrest.
 {¶ 42} The record demonstrates that appellant was arrested on March 27, 2005 and remained incarcerated until the trial of this matter on November 15, 2005. For purposes of speedy trial computation, time starts to toll the day after the arrest. Statev. McCornell (1993), 91 Ohio App.3d 141, 145, 631 N.E.2d 1110. Thus, we begin our counting on March 28, 2005.
 {¶ 43} The trial of this matter did not commence until November 15, 2005. However, appellant signed a limited waiver of speedy trial time on July 12, 2005 which was effective until December 31, 2005 after the trial court granted his request for new counsel. Accordingly, the time with which this court is concerned is from March 28, 2005 until the time of waiver on July 12, 2005.
 {¶ 44} The total number of days appellant was incarcerated from March 28, 2005 to July 12, 2005 was 107 days.[1] As 107 days is clearly beyond the 90 day time limit prescribed in the triple count provision, the burden shifts to the state to demonstrate that appellant was not entitled to a trial within the time limits prescribed by R.C. 2945.71. See State v. Butcher
(1986), 27 Ohio St.3d 28, 31, 500 N.E.2d 1368.
 {¶ 45} R.C. 2945.72 specifies the reasons for which a trial court may extend the limits of R.C. 2945.71. R.C. 2945.72 states in relevant part:
 {¶ 46} "The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
 {¶ 47} "* * *
 {¶ 48} "(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
 {¶ 49} "* * *
 {¶ 50} "(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;
 {¶ 51} "* * *."
 {¶ 52} R.C. 2945.72(E) permits the tolling of the speedy trial time when a defendant makes a demand for discovery and a bill of particulars. State v. Brown, 98 Ohio St.3d 121, 124,2002-Ohio-7040, 781 N.E.2d 159. In the instant matter, appellant made a demand for discovery and a bill of particulars on April 21, 2005. The state timely responded to appellant's demands on April 28, 2005. Therefore, the speedy trial time was tolled for seven days.
 {¶ 53} Additionally, a trial court's issuance of a sua sponte continuance is a tolling event pursuant to R.C. 2945.72(H) as long as the continuance is reasonable and the court states its reason therefore. State v. Mincy (1982), 2 Ohio St.3d 6,441 N.E.2d 571; State v. Driver, Mahoning App. No. 03 MA 210,2006-Ohio-494; State v. Barker, Lucas App. No. 1-01-1290,2003-Ohio-5417. In the case sub judice, there is no dispute that the trial court's sua sponte seven day continuance was reasonable. The trial court stated in the journal entry that the continuance was due to the fact that the judge was engaged in another trial. Thus, appellant's time was tolled from June 29, 2005 until July 6, 2005, for a total of seven additional days.
 {¶ 54} In addition to the days tolled due to the discovery requests and the trial court's sua sponte continuance, the state directs this court to three continuances which it claims tolled the speedy trial period for a total of 44 days. Appellant argues none of these continuances were requested or granted in open court and on the record. In asserting this proposition, appellant relies on the Supreme Court of Ohio's decision in State v.King, 70 Ohio St.3d 158, 1994-Ohio-412, 637 N.E.2d 903. Appellant's application of King, supra, to this case is misplaced. In that case, the court held: "To be effective, an accused's waiver of his constitutional and statutory rights to a speedy trial must be expressed in writing or made in open court on the record." Id. at 161. The King court required a defendant's waiver to be written or on the record, not his request for a continuance. See id. Accordingly, we find the court's holding in King, supra, inapplicable to this case.
 {¶ 55} Appellant further asserts that the continuances do not toll the speedy trial time because none of the journal entries executed by the trial court explain the reasons for the continuances. This court in State v. Baker (1993),92 Ohio App.3d 516, 530-531, 636 N.E.2d 363 noted that (1) the granting of a continuance must be recorded by a trial court in its journal, (2) the journal entry must identify the party to whom the continuance is chargeable, and (3) if the trial court is acting sua sponte, the journal entry must indicate and set forth the reasons justifying the continuance. The Baker court continued by holding: "[i]f the continuances were not made by the trial court sua sponte, but were made, according to the journal entry, at the request of the defense, the journal was not required to indicate the reasoning for the particular continuance." Id.
 {¶ 56} In the instant matter, the record reveals three relevant journal entries.
 {¶ 57} Journal entry filed on April 29, 2005 states:
 {¶ 58} "* * * Pre-trial held today, 4/27/05, and continued to 5/11/05 at 9:00 a.m. at request of the defendant. * * *"
 {¶ 59} Journal entry filed on May 13, 2005 states:
 {¶ 60} "* * * Pre-trial held today, 5/11/05, and continued to 5/25/05 at 9:00 a.m. at request of the defendant. * * *"
 {¶ 61} Journal entry filed on May 26, 2005 states:
 {¶ 62} "* * * Pre-trial held today, 5/24/05, and continued to 6/09/05 at 9:00 a.m. at request of the defendant. * * *"
 {¶ 63} These three journal entries granting continuances note that appellant requested these continuances. Accordingly, these 44 days should be charged against the defense in tolling the speedy trial period.
 {¶ 64} As indicated above, we have determined that appellant's speedy trial time was tolled by seven days for the discovery demand, seven days for the trial court's sua sponte continuance, and 44 days for appellant's requests for continuances, bringing the total amount of speedy trial days tolled to 58 days. Accordingly, we subtract these 58 days from the 107 days it took to bring appellant to trial and determine that appellant was brought to trial within 49 days of his arrest. As this is clearly within the 90 day limit prescribed by R.C.R.C.2945.71, we find that appellant's speedy trial rights were not violated. Appellant's first assignment of error is without merit.
 {¶ 65} Appellant's second assignment of error states:
 {¶ 66} "The appellant's convictions are against the manifest weight of the evidence."
 {¶ 67} In State v. Thompkins, 78 Ohio St.3d 380, 388,1997-Ohio-52, 678 N.E.2d 541, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 68} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Black's [Law Dictionary (6 Ed. 1990)], at 1594."
 {¶ 69} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citing Tibbs v. Florida (1982), 457 U.S. 31,45, 102 S.Ct. 2211, 72 L.Ed.2d 652. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Statev. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 70} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 71} In this matter we cannot conclude that the jury lost its way. Appellant contends that his convictions are against the manifest weight of the evidence because the state's case rests entirely upon unreliable eyewitnesses identifications of appellant as the assailant. In support of this argument, appellant directs this court to portions of the trial transcript in which Sutton testified that he only saw appellant at the cold stand identification when the police shined a light upon him. Appellant contends that this testimony proves that Sutton initially did not identify appellant as the assailant. We find appellant's interpretation of Sutton's testimony erroneous. A correct interpretation of this testimony would indicate that by making this statement Sutton merely meant that he was unable to clearly see appellant and when the officer shined a light on him he could see appellant's face more clearly and conclude that he was the assailant.
 {¶ 72} Next, appellant maintains that Sutton's identification was unreliable because he first told the police that the man who robbed him was wearing gray sweat pants, but then noticed during the cold stand identification that appellant was wearing light-blue jeans. We find appellant's argument unpersuasive. While Sutton's initial description of the style of pants did not exactly match the pants appellant was wearing during the cold stand identification, he correctly described appellant to the police as a light-skinned black male, about six-foot, with a receding hairline. He further described the black semi-handgun that police observed appellant throw from his person as he fled police.
 {¶ 73} Appellant further argues that Chandler's identification of appellant was unreliable because he was required to wear eyeglasses and admitted that he was not wearing eyeglasses at the time of the robbery or the cold stand identification. We reject appellant's argument that this testimony renders the entire identification of appellant unreliable. Chandler testified that he had eyeglasses when he was little in order to see long distances. An alleged inability of Chandler's to see long distances would not hinder his identification of appellant as when the robbery took place, Chandler was mere inches from appellant. Furthermore, even if we were to find appellant's argument persuasive as to Chandler's identification of appellant, which we do not, we nevertheless decline to find the entire cold stand identification of appellant unreliable as the two other victims identified appellant as the assailant.
 {¶ 74} Additionally, even if we were to find Sutton's and Chandler's identifications of appellant as the assailant unreliable, we nevertheless would find that the manifest weight of the evidence establishes appellant as the perpetrator of the robberies. The state also presented considerable amount of circumstantial evidence which would justify appellant's convictions. More specifically, the state presented evidence that the crimes were committed within 20 minutes of each other and within close proximity of one another. Also, appellant was arrested less than a block away from the second robbery. Moreover, appellant's clothing and personal appearance matched the description given by all three witnesses prior to the identification. Finally, the words used and actions of appellant were nearly identical in each of the two robberies. Weighing all the evidence and reasonable inferences, we find that the jury could reasonably conclude that appellant was the perpetrator of these crimes. Accordingly, appellant's second assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Frank D. Celebrezze, Jr., J., and Kenneth A. Rocco, J., concur.
[1] Both appellant and the state miscalculate the total amount of days to be 117. We note, however, that there were four days in March, 30 days in April, 31 days in May, 30 days in June and 12 days in July for a total of 107 days.